FREEMAN v. STATE-WIDE CARPET DISTRIBUTORS, INC.

1. ACTION—MISJOINDER OF CAUSES—CONVENIENT ADMINISTRATION OF JUSTICE.

Bill of complaint was properly dismissed for misjoinder of actions, where it embraced separate causes of action arising out of several hundred transactions involving the purchase of carpets occurring over a period of many months and perhaps several years, where presumably some alleged misrepresentations were made to some plaintiffs and not to others, some plaintiffs reasonably may have relied on them and others may not, circumstances of the execution of various purchase contracts and promissory notes varied considerably so as to afford a basis for rescission to some and not to others, since there was a very substantial disparity of issues of law and fact which would not promote the convenient administration of justice (CL 1948, § 608.1).

2. SAME—CLASS ACTION.

Suit commenced by bill of complaint in which several hundred persons joined their separate causes of action for misrepresentations in sales of carpeting to them by defendant sellers and bank cannot be considered as a class action under the court rule, since the bill does not assert a cause of action in behalf of a class or a right that is joint or common, or secondary, and there is no common question of law or fact affecting the several rights or a common relief, and notwithstanding each plaintiff was subjected to the same advertising or other uniform pattern of conduct, the defendants' liability to each plaintiff will depend upon specific facts not common to all or any substantial number of them (Court Rule No 16 [1945]).

3. APPEAL AND ERROR—DISMISSAL OF BILL—REMAND FOR SEVERANCE OF MISJOINED ACTION.

Dismissal of bill of complaint is affirmed rather than have cause

---

REFERENCES FOR POINTS IN HEADNOTES

[1] 1 Am Jur, Actions §§ 65–69.
[2] 39 Am Jur, Parties §§ 44–54.
   Comment Note: Identity or community of interests essential to class or representative suit. 132 ALR 749.
[3] 3 Am Jur, Appeal and Error § 1163.

remanded for severance of misjoined causes of action, where bill does not separately set forth claim against defendants of each of several hundred plaintiffs so as to permit determination from the pleadings as to any individual plaintiff from whom or how much carpeting was purchased, or dollar value thereof, when or where the transactions occurred, or relief claimed (CL 1948, § 608.1).

Appeal from Wayne; FitzGerald (Frank), J. Submitted August 16, 1961. (Docket No. 55, Calendar No. 48,897.) Decided December 28, 1961.

Bill by Robert H. Freeman and 82 others, with additional parties plaintiff subsequently added, against State-Wide Carpet Distributors, Inc., Wear-Ever Carpet Distributors, Inc., both Michigan corporations, Royce Management Co., a copartnership composed of Ralph Ross, Chris Mullay, and Barton Frisbee, Earl Serap, doing business as Tri-State Wholesale Carpet Distributors Co., and The Michigan Bank, a Michigan banking corporation, for rescission of contracts and cancellation of notes, and for accounting and injunctive relief aimed to stop sales, finance, and collection practices. Bill dismissed. Plaintiffs appeal. Attorney General intervenes in public interest. Affirmed.

*John T. McWilliams,* for plaintiffs.

*Langs, Molyneaux & Armstrong (John F. Langs, Richard F. Molyneaux,* and *Richard J. Langs,* of counsel), for defendant bank.

*Paul L. Adams,* Attorney General, *Joseph B. Bilitzke,* Solicitor General, and *Maxine Boord Virtue,* Assistant Attorney General, for intervenor.

*Amicus curiae:*

*Warner, Norcross & Judd (Lawson E. Becker,* of counsel), for Michigan Bankers Association.

SOURIS, J.   Plaintiffs' bill of complaint was dismissed on motion for misjoinder.  Their claim of appeal was filed in August of 1960 and dismissed by this Court, on motion, in February of 1961 for plaintiffs' failure to perfect their appeal.  It was subsequently reinstated in May of 1961, and the attorney general then intervened in this Court in behalf of the people.

There were originally 83 plaintiffs, others were added by petition to intervene, and still others had filed petitions to intervene at the time the bill was dismissed.  It appears that 300 or 400 persons, some asserting claims as husband and wife, seek relief in this single suit against State-Wide Carpet Distributors, Inc.; Wear-Ever Carpet Distributors, Inc.; Earl Serap, doing business as Tri-State Wholesale Carpet Distributors Co.; Royce Management Co., a copartnership consisting of Ralph Ross, Chris Mullay, and Barton Frisbee; and The Michigan Bank.  The bill alleges that plaintiffs are the victims of defendants' fraudulent misrepresentations whereby they were induced to purchase carpeting and to finance such carpet purchases by promissory notes discounted by the defendant bank.  It is alleged that State-Wide, Wear-Ever, Tri-State, and Royce Management were all controlled by Earl Serap and his associates and engaged in a fraudulent scheme to sell inferior carpeting at exorbitant prices by offering gift premiums and cash payments to purchasers for referrals to other customers.  The misrepresentations attributed to these defendants were alleged in the bill as follows:

"(a)  That the carpeting would be furnished at *no cost to* plaintiffs, which representation was and is false;

"(b)  That the carpeting was worth $20 per yard and was high-grade 'commercial' carpeting made of 100% virgin Australian wool from sheep of the high

mountains only; which is a false representation of material fact;

"(c) That the carpeting was commercial carpeting, superior to that used in residences, and was being newly introduced into the residential field, which statements were and are false, in that it is low-grade, cheap and defective, inferior material.

"(d) That the carpeting was now being used in the Ford Rotunda, General Motors Futurama vans, Sears and Roebuck stores, downtown Detroit theaters, Howard Johnson diners, the Ford Motor Company engineering staff building, downtown Detroit hotels, and the Michigan Bell Telephone Company headquarters building in Detroit, all of which statements of material facts were and are false;

"(e) That the loans to be made by the Michigan Bank were interest free if paid in 90 days, which statement of material fact was and is false;

"(f) That installation would be made without tacks, with water soluble paste and would not damage the floor, which statement of material fact was and is false;

"(g) That the carpet-backing is of 1/2 inch neoprene which statement of material fact was and is false;

"(h) That the carpeting would not fade or mat, and the nap would spring right back up if crushed by furniture, which statements of material facts were and are false;

(i) That the carpeting installed would be the same as the samples shown to plaintiffs, which statement of material fact was and is false;

"(j) That the carpeting was made of individual loops knotted into neoprene and would not ravel or pull, which statements of material facts were and are false;

"(k) That State-Wide had been in business since 1872, which statement of material fact was and is false;

"(l) That the warranties given by State-Wide and Wear-Ever were false and fraudulent and part of

the scheme to deceive plaintiffs and in violation of the uniform sales act, CL 1948, § 440.12 *et seq.* (Stat Ann 1959 Rev § 19.252 *et seq.*), and for the breach of warranties, plaintiffs do rescind in accordance with CL 1948, § 440.69 (Stat Ann 1959 Rev § 19.309) and demand back the price paid;

"(m) Defendants Wear-Ever and State-Wide intentionally and wrongfully over-measured the square yard requirements of plaintiffs' floors and over-charged them based upon such measurements at the rate of $20 per yard;

"(n) Defendants Wear-Ever and State-Wide falsely represented that they had double AA–1 top Dun and Bradstreet ratings which representation was and is false."

By amendment to the bill of complaint plaintiffs charged defendant bank with constructive fraud in the following respects:

"(a) The Michigan Bank entered into an agreement or understanding with defendant carpet sellers, to receive and discount notes to be obtained by them and presented by defendants, their agents, servants, and employees, after having knowledge or information that some of the defendants had been cut off from negotiating notes at other financial institutions because of wide-spread complaints that said defendants were selling inferior and defective carpeting to innocent homeowners by means of false advertising, unlawful trade practices, and fraudulent inducements;

"(b) Defendant bank had actual notice that defendant, Earl Serap, president of State-Wide was also president of Wear-Ever and had formerly worked the same sales schemes under the assumed name, Tri-State Wholesale Carpet Distributors and that 1 of the prime reasons for changing his name from Tri-State to Wear-Ever was to conceal himself from complaining homeowners who were seeking redress for the frauds he had perpetrated upon them;

"(c) Defendant bank knew that the aforesaid Earl Scrap changed his business name again from Wear-Ever to State-Wide because Wear-Ever had sold much defective carpeting and engaged in serious overcharges to customers and Wear-Ever's reputation was bad and the new name, State-Wide was being used to escape the consequences of the misrepresentations practiced upon plaintiffs and the public by Wear-Ever and still the bank eagerly accepted notes presented by both Wear-Ever and State-Wide;

"(d) Defendant bank had numerous complaints from plaintiffs and other members of the public that the notes were based upon contracts both of which were induced by material misrepresentations of facts to the homeowners;

"(e) Defendant bank wrongfully assured those who complained to it that both Wear-Ever and State-Wide were very reputable firms; that they had been in business for many years; that they were worth millions of dollars; that they had 'the highest' Dun and Bradstreet ratings; and the bank had 'documentary evidence' that the carpet sold to plaintiffs was of the highest grade and was worth $12 a square yard wholesale, and thereabouts; and that said carpet sellers made good on all their representations and warranties; when the bank knew or should by the exercise of ordinary prudence [have?] known, that these assurances were not true, thereby enabling the frauds upon the public to continue to plaintiffs' damage."

The relief sought by plaintiffs included rescission of their purchase contracts and promissory notes, return of payments made thereon, injunctive relief to restrain further sales of such carpeting, negotiation of the promissory notes, and institution of suit to collect payment thereof, appointment of a receiver for all defendants except the bank, money damages, and other relief.

Several questions are presented to us for review, including the propriety of the joinder of plaintiffs'

separate causes of action, the possibility of considering this a class action, the adequacy of legal remedies, the defendant bank's status as a holder in due course and the right of the attorney general to intervene. It is our conclusion that the chancellor's dismissal must be affirmed on the grounds that there has been misjoinder of plaintiffs' causes of action and that this is not a class action.

Joinder of causes of action is governed by CL 1948, § 608.1 (Stat Ann § 27.591), which provides:

"The plaintiff may join in 1 action, at law or in equity, as many causes of action as he may have against the defendant, but legal and equitable causes of action shall not be joined; but when there is more than 1 plaintiff, the causes of action joined must be joint, and if there be more than 1 defendant, the liability must be one asserted against all of the material defendants, or sufficient grounds must appear for uniting the causes of action in order to promote the convenient administration of justice, or when several suits shall be commenced against joint and several debtors, in the same court, the plaintiff may, in any stage of the proceedings, consolidate them into 1 action. If it appear that any such causes of action cannot be conveniently disposed of together, the court may order separate trials, or whenever several suits shall be pending in the same court, by the same plaintiff against the same defendant, for causes of action which may be joined, the court in which the same shall be prosecuted may, in its discretion, order the several suits to be consolidated into 1 action."

There is no claim here that plaintiffs assert a joint cause of action. It is claimed that the statute permits joinder of multiple causes of action even if not joint where the "convenient administration of justice" would thereby be promoted. A similar claim was made in the recent case of *Hardware Dealers Mutual Insurance Co. v. R. H. Hidey, Inc.*, 349 Mich 490, 507, 516, in which separate causes of action

asserted by a number of plaintiffs were included in 1 suit. A majority of this Court held that the convenient administration of justice would not be served by permitting joinder in the circumstances disclosed by that record. Both opinions for affirmance relied upon the fact that different questions of law and fact would be involved in the various claims or in defense thereto. Significantly, the dissenting opinion similarly acknowledged (p 506) that "a complete or substantial disparity of issues of either law or fact and a complete or substantial disparity of defenses available against proposed joint plaintiffs would indeed affect the decision as to whether or not joinder promoted the convenient administration of justice."

In the case at bar the bill of complaint embraces separate causes of action arising out of several hundred transactions apparently occurring over a period of many months and perhaps several years. Presumably some of the misrepresentations alleged therein were made to some plaintiffs and not to others and some plaintiffs reasonably may have relied on them and others may not. It is evident that the circumstances of the execution of the purchase contracts and the promissory notes varied considerably so that some plaintiffs may have grounds for rescission not available to others. In short, the very substantial disparity of issues of law and facts between the multiple plaintiffs' claims would render any judicial proceeding in which all were sought to be adjudicated simultaneously, incomprehensible to the litigants, their counsel and the chancellor as well.

The same disparity of issues compels our ruling that this cannot be considered a class action under Court Rule No 16 (1945). The fact is that the bill of complaint does not assert a cause of action in behalf of a class, nor do plaintiffs claim that it does.

What they do claim is that it "should now be considered to be so amended as to constitute a class action" under the rule.

The rule requires that, where the right sought to be enforced in a class action is not joint or common, or secondary, but there are involved instead several rights (as there are here), the object of the action must be adjudication of claims affecting specific property or there must be "a common question of law or fact affecting the several rights and a common relief" must be sought. Plaintiffs suggest that there is a common question of law relating to defendant bank's status as a holder in due course and that a common question of fact exists because some or all of the plaintiffs relied upon certain television advertising used by the defendants and defendants otherwise followed a uniform pattern of conduct in their dealings with plaintiffs. Although the bank's status as a holder of various promissory notes may be involved in each of the plaintiffs' claims and although each plaintiff was subjected to the same advertising or other uniform pattern of conduct, the defendants' liability to each plaintiff will depend upon specific facts which, by the nature of these transactions, cannot be common to all plaintiffs or to any substantial number of them.

The bill of complaint does not separately set forth each plaintiff's claim against the defendants. We cannot determine from the pleadings as to any individual plaintiff, from whom carpeting was purchased, what quantities and dollar values are involved, when or where the transactions occurred, or how it is claimed relief is legally or equitably due. Had the bill been so drawn that its multiple claims could be severed upon remand, we would be inclined so to order. *Robinson* v. *Schantz,* 363 Mich 298. However, under the circumstances disclosed by the

record before us, there is no alternative to our affirmance of the dismissal.

DETHMERS, C. J., and CARR, KELLY, BLACK, EDWARDS, and KAVANAGH, JJ., concurred.

OTIS M. SMITH, J., took no part in the decision of this case.