Michelle VAN VELS, et al., Plaintiffs,

v.

PREMIER ATHLETIC CENTER OF PLAINFIELD, INC., et al., Defendants.

No. 1:97 CV 665.

United States District Court, W.D. Michigan, Southern Division.

Sept. 17, 1998.

Phillip C. Rogers, Grand Rapids, MI, Owen Randolph Bragg, Horowitz, Horowitz & Associates, Chicago, IL, for Michelle Van Vels, Vona Chachulski, Catherine Hodges, Paul Dauchy, Hollie Mitchell, Jacqueline Gerlofs, Tracie Rathbun, Raenell Lea Harmsen, Kimberly Harmon, Aime Johnson, Melanie Allen, Tara Mulder, Jennifer Lawley, Nicole Crabbe, Steve McCord, Jamie Forton, Gale Inscore and William Schaffer.

Phillip C. Rogers, Grand Rapids, MI, for Darius Cross.

Charles E. Chamberlain, Jr., Willey & Chamberlain, Grand Rapids, MI, for Premier Athletic Center of Plainfield, Inc., Premier Athletic Center, Inc., Premier Athletic Center of Grandville, Premier Lady Fitness of Cascade, Inc., Premier Lady Fitness of Kentwood, Inc., Premier Ladies Fitness and Aerobics, Inc., Premier Fitness Center of Holland, Inc., Crossroads Fitness Centers, Inc., American Health Fitness, Premier Fitness Center of Norton Shores, Inc., Premier Lady Fitness, Inc., Premier Lady Fitness Aerobic Center, Inc., MMC Acquisitions, Inc., d/b/a Cosmopolitan Lady, and Steven D. Millenbach, a/k/a Steve Millenbach.

Paul G. Van Gessel, Sluiter, Agents, Cardinal, VanGessel, Wyoming, MI, for Linda S. Zeger.

Paul G. Van Gessel, Sluiter, Agents, Cardinal, VanGessel, Wyoming, MI, Charles E. Chamberlain, Jr., Willey & Chamberlain, Grand Rapids, MI, for International Receivables Management, Inc. and Health Trends International, Inc.

J. Terrance Dillon, Dykema Gossett PLLC, Grand Rapids, MI, for Merchants Funding, Inc. and Sales Finance, Inc.

Lee T. Silver, Buchanan, Silver & Beckering, PLC, Grand Rapids, MI, for Dent-A-Med, Inc.

Frank E. Steel, Goldman & Rosen, Akron, OH, for Fair Finance Company, d/b/a Fair Finance and Fair Financial Services.

Boyd A. Henderson, Miller, Johnson, Snell & Cummiskey, Grand Rapids, MI, for North American Service Corp., Travelers Acceptance Corp. and Travelers Data Services.

Lawrence M. Brenton, Early, Lennon, Peters & Crocker, PC, Kalamazoo, MI, for General Acceptance Corporation of Michigan.

## *OPINION*

ENSLEN, Chief Judge..

This matter is before the Court on the Plaintiffs' Motion for Class Certification and Motion for Leave to File First Amended Class Action Complaint ("Motion for Leave"). For the reasons which follow, the motions will be granted.

### *BACKGROUND*

This action was first brought under the Truth–in–Lending Act ("TILA", 15 U.S.C. § 1601 *et seq.*) and the Michigan Consumer Protection Act ("MCPA," Mich. Comp. Laws § 445.901 *et seq.*) to recover for statutory violations relating to hidden finance charges allegedly charged by the various fitness center Defendants on consumer contracts for fitness services. The Plaintiffs further sought recovery due to the closure of the several fitness centers in May 1997 on the grounds of fraud, breach of contract, and violation of the MCPA. Plaintiffs have further sued the assignees of the contracts (the financing companies Defendants) on the above-noted claims by virtue of the assignments. This Court has previously reviewed and decided several motions filed in this matter. Most notably, on June 9, 1998, this Court decided Defendants Dent–A–Med,

Inc., Merchants Funding, Inc., and Sales Finance, Inc.'s motions to dismiss the complaint. At that time, the Court dismissed the TILA claims against those Defendants under Federal Rule of Civil Procedure 12 because of the statutory treatment under TILA, 15 U.S.C. § 1641, of assignees as to disclosure violations which are not evident from the face of the financing disclosure. (*See* Dkt. No. 86.) The Court did not dismiss TILA claims against the other Defendants and likewise retained non-TILA claims against the assignee Defendants.

This action was originally filed on August 6, 1997. A Case Management Order was entered on January 3, 1998 establishing a schedule for the litigation. The schedule was most recently amended by stipulation of the parties, which set a new motion filing deadline of August 29, 1998 and a new discovery deadline of September 12, 1998. (*See* Dkt. No. 114.) Plaintiffs filed on May 21, 1998 their Motion for Class Certification (Dkt. No. 84). Plaintiffs then filed on July 23, 1998 their Motion for Leave (Dkt. No. 108). The Motion for Leave proposes to add three additional Defendants. The proposed First Amended Class Action Complaint (the "Amended Complaint") names approximately twenty Plaintiffs and approximately thirty Defendants. The Amended Complaint would also add a state law claim under the Michigan Retail Installment Sales Act ("MRISA"), Mich. Comp. Laws Section 445.851 *et seq.* The MRISA allegations are proposed in order to seek statutory damages under MRISA against the assignee Defendants for the financing disclosure violations.

These motions and the attendant briefing as well as the Amended Complaint explain sufficiently the scope of this lawsuit, the nature of the class claims, and the identity and particular grievances of the class representatives. The closure of the Defendant health clubs in May 1997 resulted in a cascade of calls and written complaints to the Better Business Bureau of Western Michigan and the State of Michigan Attorney General's office. (Dkt. No. 84, Exhibits I and J.) The class representatives share in these complaints—relating to the Defendants' failures to provide contracted services and the failure to disclose financial charges. By their affidavits, the Plaintiffs attest to an understanding of the claims asserted in this suit, the limitations on remedies attendant to class actions, and their responsibilities as class representatives. (Dkt. No. 84, Exhibit L.) The Amended Complaint filed in this matter is verified by the class representatives as to the claims asserted and attaches their financed contracts as exhibits. The Amended Complaint also notes for each of the Plaintiffs the finance company to whom the contract was assigned. The representative nature of the claims asserted by these Plaintiffs can be seen from the Appendices included in Defendant Merchant Funding, Inc.'s Exhibits. (*See* Dkt. No. 103.) The Appendices show that the named Plaintiffs generally financed their contracts over 36 months, that they sought services or amenities at nine of the twelve club locations, that they financed amounts between $400 and $1600 on the contracts, that they generally entered into the contracts within a year of the filing of this suit, and that they made payments on the contracts ranging from nothing to over $2000. (*Id.*)

Some of the briefing done by the parties as to the Motion for Class Certification is impertinent in that it departs from questions relevant under Rule 23 and seeks to provide evidence for or against the allegations made. *See Eisen v. Carlisle & Jacquelin,* 417 U.S. 156, 177, 94 S.Ct. 2140, 40 L.Ed.2d 732 (1974) (stating that certification question concerns Rule 23 factors and not an assessment of the merits). Nevertheless, suffice it to say, the evidence filed generally supports a conclusion that the Defendants made contracts with class members for health club facilities and amenities, and that the similar form contracts used by the Defendants did not disclose a cash discount or the effect of a cash discount on the financing rate. Furthermore, there is evidence both disputing and supporting a conclusion that the Defendants carried out policies of not disclosing the hidden finance charge and of planning to close the clubs while continuing to sell long-term memberships.[1] Plaintiffs' Motion for Class

---

1. The evidence filed principally consists of affidavits of employees or former employees of the

Certification asks the Court to define the proposed class as follows: all persons who purchased health club memberships with any of the Premier health clubs and whose memberships were financed with interest payments payable in more than four installments. The proposed time periods are: (a) one year prior to the filing of the complaint for violations of TILA; (b) six years prior to the filing of the complaint for breach of contract; (c) six years prior to the filing of the complaint for violation of MCPA; (d) three years prior to the filing of the complaint for common law fraud; and (e) six years prior to the date of the filing of the complaint for MRISA.[2]

### STANDARD FOR AMENDMENT OF PLEADINGS

Amendment of pleadings is governed by Federal Rule of Civil Procedure 15. Under Rule 15, the Court is required to permit liberal amendment of the pleadings. The standard for amendment was announced by the United States Supreme Court in *Foman v. Davis*, 371 U.S. 178, 83 S.Ct. 227, 9 L.Ed.2d 222 (1962) as follows:

> In the absence of any apparent or declared reason—such as undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, futility of amendment, etc.—the leave sought should, as the rules require, be "freely given."

*Id.* at 182, 83 S.Ct. 227. *See also Keweenaw Bay Indian Community v. State of Michigan*, 11 F.3d 1341, 1348 (6th Cir.1993). *Halbert v. City of Sherman*, 33 F.3d 526, 529 (5th Cir.1994).

### STANDARD FOR CLASS CERTIFICATION

■ According to the United States Supreme Court, this Court must conduct a "rigorous analysis" into whether the prerequisites of Federal Rule of Civil Procedure 23 are met before certifying a class action. *General Tel. Co. v. Falcon*, 457 U.S. 147, 161, 102 S.Ct. 2364, 72 L.Ed.2d 740 (1982). The trial court has broad discretion in deciding whether to certify a class, but that discretion must be exercised within the framework of Rule 23. *Gulf Oil Co. v. Bernard*, 452 U.S. 89, 100, 101 S.Ct. 2193, 68 L.Ed.2d 693 (1981); *In re American Medical Systems, Inc.*, 75 F.3d 1069, 1079 (6th Cir.1996). The "rigorous analysis requirement" means that a class is not maintainable merely because the complaint parrots the legal requirements of Rule 23. *American Med. Systems*, 75 F.3d at 1079. Although a hearing prior to the class determination is not always required, "it may be necessary for the court to probe behind the pleadings before coming to rest on the certification question." *Falcon*, 457 U.S. at 160, 102 S.Ct. 2364; *see also Weathers v. Peters Realty Corp.*, 499 F.2d 1197, 1200 (6th Cir.1974) (stating that in some cases it will be necessary to give the parties an opportunity to present evidence on the certification question). In this case, the extensive briefing filed by the parties, the Court's past review of motions, and the documentary evidence and affidavits filed make the hearing of evidence unnecessary because the Court is able to probe behind the pleadings without additional evidence or argument.

■ Rule 23 places the burden of class certification on the Plaintiffs. *In re American Medical Systems*, 75 F.3d at 1079; *Senter v. General Motors Corp.*, 532 F.2d 511,

---

Defendants either supporting or discounting the existence of such policies. However, there are some printed company "practices" dating from 1993 which indicate a policy of offering undisclosed cash discounts. (*See* Dkt. No. 110.)

2. The parties, in light of the amendment to the complaint, have not commented on the limitation period appropriate to MRISA. The six-year date here recognized is taken from the limitation statute for "other personal actions," Mich. Comp. Laws § 600.5813, as was done in the case of

*Grigg v. Robinson Furniture Co.*, 78 Mich.App. 712, 260 N.W.2d 898, 901 (1977). Should the parties dispute the application of this limitation period, a prompt motion to alter or amend the Court's order should be filed before notification of class members. There is reason to describe the class claims for the entire length of the limitation period since there is evidence in the record of a policy of not disclosing a cash discount in health club contracts as far back as January 1993. (*See* Dkt. No. 110.)

522 (6th Cir.1976). Under the language of the Rule, the Plaintiff must prove four prerequisites under subsection (a) and one of the prerequisites under subsection (b) for the class to be certified. The Rule provides in pertinent part as follows:

(a) Prerequisites to a Class Action. One or more members of a class may sue or be sued as representative parties on behalf of all only if

(1) the class is so numerous that joinder of all members is impracticable,

(2) there are questions of law or fact common to the class,

(3) the claims or defenses of the representative parties are typical of the claims or defenses of the class, and

(4) the representative parties will fairly and adequately protect the interests of the class.

(b) Class Actions Maintainable. An action may be maintained as a class action if the prerequisites of subdivision (a) are satisfied, and in addition:

(1) * * * *; or

(2) the party opposing the class has acted or refused to act on grounds generally applicable to the class, thereby making appropriate final injunctive relief or corresponding declaratory relief with respect to the class as a whole; or

(3) the court finds that the questions of law or fact common to the members of the class predominate over any questions affecting only individual members, and that a class action is superior to other available methods for the fair and efficient adjudication of the controversy. The matters pertinent to the findings include:

(A) the interest of members of the class in individually controlling the prosecution or defense of separate actions;

(B) the extent and nature of any litigation concerning the controversy already commenced by or against members of the class;

(C) the desirability or undesirability of concentrating the litigation of the claims in the particular forum;

(D) the difficulties likely to be encountered in the management of a class action.

Fed. R. Civ. Proc. 23(a)-(b).

### AMENDMENT OF PLEADINGS

This Court must first resolve the Motion for Leave in order to then review the Motion for Class Certification in the context of the applicable allegations. Plaintiffs' Motion for Leave asks to amend the complaint in order to assert allegations against three new Defendants, Consumer Loan Portfolios, Inc., Wheeler Investment Group, Inc., and Mountain Community Bank. Plaintiffs learned of these three entities during discovery when another Defendant, North American Service Corporation, claimed that it was merely servicing contracts which the health club Defendants had assigned to these three companies. Plaintiffs apparently believe this assertion since they have agreed with North American Service Corporation to stipulate to dismissal as to it upon joinder of the claims against the new Defendants. (Dkt. No. 108 at 8.) According to Plaintiffs, Consumer Loan Portfolios, Inc. services some 691 contracts; Mountain Community Bank services some 215 contracts and Wheeler Investment Corporation services some 20 contracts. (Dkt. No. 108 at 3.) Additionally, Plaintiffs seek to amend in order to assert claims for statutory damages under MRISA, which Act creates loan disclosure requirements comparable to TILA but without the TILA limitations of liability for assignees.

Defendants argue against amendment of pleadings because of undue delay in requesting amendment and prejudice.[3] Plaintiffs did not, in the Court's judgment, unduly delay in adding the MRISA claims. While in perfect hindsight Plaintiffs should have pleaded these allegations from the outset, Plaintiffs' delay was reasonable considering the nature and complexity of this litigation. Plaintiffs' delay in pleading the MRISA allegations has not unduly prejudiced the Defen-

---

**3.** Defendant Dent–A–Med, Inc. also refer to their pending Motion for Summary Judgment as a reason for denying amendment. The Court will review and rule on said Motion separately.

dants in that the factual predicates for those claims, and the attendant discovery, are nearly identical to the factual predicates for the earlier pleaded TILA claims. As for the three new Defendants, the Plaintiffs have not delayed excessively in suing them in that Plaintiffs did not discover their identities and roles in this litigation until some discovery had been conducted. The addition of these Defendants not long before trial may, however, prejudice their interests unless additional discovery and opportunity to file dispositive motions is allowed. These Defendants may obtain from other Defendants and the Plaintiffs copies of pertinent documents and earlier discovery—which in all likelihood will satisfy many of their demands for discovery. If, after obtaining the information, the Defendants need additional discovery or an opportunity to file dispositive motions, then the Court will be predisposed to grant reasonable extensions for those Defendants. With these accommodations in mind, the Court determines that amendment of the pleadings should be permitted under Rule 15 and leave for amendment is granted.

## CLASS CERTIFICATION

This brings the Court to the more involved question of whether to certify this action as a class action under Rule 23.

### Rule 23(a)(1)—Numerosity

First, the Court must determine whether the class is sufficiently numerous that joinder is impracticable. Numbers alone are not dispositive when the numbers are small, but will dictate impracticability when the numbers are large. H. Newberg and A. Conte, *I Newberg on Class Actions*, § 3.05 (3rd ed.1992). The Sixth Circuit Court of Appeals has held that a class of at least 35 employees was sufficient to meet the numerosity requirement under the circumstances of that case. *Afro American Patrolmen's League v. Duck*, 503 F.2d 294 (6th Cir.1974). In this case, the numbers themselves justify a conclusion of numerosity. Plaintiff's counsel has already been contacted by in excess of 500 hundred potential class members who wish to participate in this suit. (Dkt. No. 84, Plaintiff's Exhibit K.) Moreover, given the large number of consumers who have filed complaints with the Better

Business Bureau of Western Michigan (1,375 according to Plaintiff's Exhibit J) and with the Attorney General's office (613 according to Plaintiff's Exhibit I), this number is likely to increase. The proposed definition of the class includes literally thousands of consumers who executed retail installment contracts for the purchase of health club services during the relevant time periods. Further, the complexity of the claims asserted here and the status of the class members as consumers support a conclusion that the filing of individual suits by consumers is impracticable both for the courts and litigants. Therefore, the Court concludes that the numerosity requirement is satisfied.

### Rule 23(a)(2)—Commonality

Next, the Rule requires commonality—that there are questions of law and fact common to class members. Not every common question suffices. *Sprague v. General Motors Corp.*, 133 F.3d 388, 397 (6th Cir.1998). What is necessary for certification are common issues the resolution of which will advance the litigation. *Id.* In cases involving the question of whether a defendant has acted through an illegal policy or procedure, commonality is readily shown because the common question becomes whether the defendant in fact acted through the illegal policy or procedure. For this reason, cases of this sort are often approved as class actions. *See, e.g., Dix v. American Bankers Life Assurance Co.*, 429 Mich. 410, 415 N.W.2d 206 (1987) (approving MCPA class action as to fraudulent practices of company); *Perry v. Household Retail Services, Inc.*, 180 F.R.D. 423 (M.D.Ala.1998) (approving TILA class action as to lending practices); *Ingram v. Joe Conrad Chevrolet, Inc.*, 90 F.R.D. 129 (E.D.Ky.1981) (approving TILA class action where similar form contracts were used); *Guarte v. Furniture Fair, Inc.*, 75 F.R.D. 525 (D.Md.1977) (approving TILA class action as to credit practices). Conversely, where the nature of the legal claims are such that individuals would have to submit separate proofs to establish liability, class actions are disapproved due to lack of commonality. *See, e.g., Sprague*, 133 F.3d at 398 (class action disapproved as to estop-

pel which would require individual proof of reliance); *Freeman v. State–Wide Carpet Distributors, Inc.*, 365 Mich. 313, 112 N.W.2d 439 (1961) (disapproving class action as to common law fraud because of differences in proofs as to reliance). Once it is determined that there are common questions of law and fact as to a legal claim, differences in the amounts of damages sustained by class members will usually not defeat certification. *Sterling v. Velsicol Chemical Corp.*, 855 F.2d 1188, 1197 (6th Cir.1988); *Kornberg v. Carnival Cruise Lines, Inc.*, 741 F.2d 1332 (11th Cir.1984). However, there must be a workable system for determining damages for class members if claims for monetary damages are to proceed. *Cicelski v. Sears, Roebuck & Co.*, 132 Mich.App. 298, 348 N.W.2d 685, 689 (1984).

■■■ To begin, the Court determines that there are common questions of law and fact as to the MRISA and TILA claims asserted. The common question is whether the health club Defendants did in fact regularly give forty-percent undisclosed cash discounts. If Plaintiffs prove this policy, the Plaintiffs and class members will be entitled to statutory damages under the statutes. This Court has previously determined that the finance company Defendants are not liable under TILA for undisclosed finance rates which were not apparent from the financing documents because of the statutory provisions of TILA found at 15 U.S.C. § 1641. In so ruling, the Court also determined that these limitations of TILA were not applicable to state law MCPA claims because state law, MRISA, intended the liability of holders of the notes for the non-disclosures. Some of the Defendants now argue that the MRISA claims cannot be certified because under MRISA only those claims which give the buyer the right of rescission under state law may be asserted against the holder of the note, and because the determination of a right of rescission under state law is necessarily individual as to the class members. This argument is based on a holding in a TILA case— *Mount v. LaSalle Bank Lake View*, 926 F.Supp. 759, 764 (N.D.Ill.1996). The *LaSalle Bank* case held that TILA claims against a seller could not be asserted against an assignee unless the individual buyer proved a

right to rescind the contract under state law. *Id.* While the *LaSalle Bank* is questionable as an interpretation of TILA, it simply has no application to MRISA. Michigan Compiled Laws Section 445.865(d), Section 15(d) of MRISA, states simply that:

> A holder of a retail installment contract of the buyer is subject to all the claims and defenses of the buyer arising out of the retail installment transaction, but the buyer's recovery shall not exceed the amount paid to the holder thereunder.

This is straight forward statute, which makes the assignee subject to MRISA claims but limits the assignee's liability to the amount of payments received. It should not be read as containing additional requirements (that the claim be one entitling the plaintiff to rescission under state law) which are absent from the statutory language and which run contrary to the remedial purpose of the statute.

As for certification of Plaintiffs' breach of contract claims, it is evident under Michigan law that to prove a right to rescind a contract based on a breach thereof a plaintiff must prove the breach is material. *Walker & Co. v. Harrison*, 347 Mich. 630, 81 N.W.2d 352 (1957); *Omnicom v. Giannetti Inv. Co.*, 221 Mich.App. 341, 348, 561 N.W.2d 138 (1997). To determine if a breach is material, a fact finder must assess a number of factors including: whether the non-breaching party obtained the benefit it reasonably expected under the contract; the extent to which damages would adequately compensate the non-breaching party; the extent to which the breaching party has partly performed; the comparative hardship on the breaching party in terminating the contract; .the willfulness of the breach; and the possibility of future performance. *Id.* In *Lorenz Supply Co. v. American Standard, Inc.*, 419 Mich. 610, 358 N.W.2d 845, 848 n. 10 (1984), the Michigan Supreme Court determined that a contractual party's failure to pay one-third of a contract balance was a breach of contract but that the question of whether the breach of contract was material must be remanded for trial. Since the question of materiality must be determined individually for each class member, Plaintiffs' breach of contract claims are not amenable to class certification.

Defendants also challenge the certification of common law fraud claims. The basis for the challenge is that common law fraud claims require individual proof of reliance such that certification is inappropriate. This issue has been considered both by the Michigan Supreme Court and the Sixth Circuit Court of Appeals. The Michigan Supreme Court held in *Freeman v. State-Wide Carpet Distributors, Inc.*, 365 Mich. 313, 112 N.W.2d 439 (1961) that a common law fraud claim is not amenable to class action because it requires individual proof of reliance. A similar conclusion was reached by the Sixth Circuit Court of Appeals in *Sprague v. General Motors Corp.*, 133 F.3d 388, 397 (6th Cir.1998), which refused to certify ERISA estoppel claims because individual proof of reliance was required. Accordingly, the Court determines that the common law fraud claims asserted cannot be certified because common legal issues will not advance the litigation.

 Defendants further challenge the certification of the misrepresentation claims asserted in the MCPA counts, which relate to both the planned closure of the health clubs and the undisclosed financing charges. The MCPA misrepresentation claims as to both the finance charges and the club closures involve the common question of whether the health club acted through the alleged policies. Unlike common law fraud, misrepresentation claims under the MCPA do not require proof of individual reliance. *Dix v. American Bankers Life Assurance Co.*, 429 Mich. 410, 415 N.W.2d 206 (1987). For this reason, the Michigan Supreme Court in *Dix* determined that class action consumer fraud claims should be certified. As such, the MCPA claims asserted here should be certified as involving common questions of law and fact.

 Notwithstanding the above, the MCPA limits monetary damages to consumers in class actions to "actual damages." Mich. Comp. Laws § 445.911(3). This limitation means that consumers may only obtain "the difference between the actual value of the property when the contract was made and the value that it would have possessed if the representations had been true." *Mayhall v. A.H. Pond Co.*, 129 Mich.App. 178,

341 N.W.2d 268, 271 (1983). Furthermore, the weight of the case law for computing "actual damages" in cases of undisclosed finance rates says that the damages should be computed by taking the difference between actual finance rate and the rate that the consumer could obtain in the marketplace. *See Wiley v. Earl's Pawn & Jewelry, Inc.*, 950 F.Supp. 1108, 1114 (S.D.Ala.1997); *McCoy v. Salem Mortgage Co.*, 74 F.R.D. 8, 13 (E.D.Mich.1976). This means that an individual assessment of the class members' credit worthiness is necessary to compute actual damages. As such, the class members' actual damage claims for the undisclosed financing rate under the MCPA will not be certified because their claims require individual proofs. The same conclusion applies to Plaintiffs' damage claims under the MCPA for misrepresentations relating to the closure of the facilities. Class members' damages for such depend on the actual value of the services promised (which requires an individual assessment of the amenities purchased at the particular club) and the value of the services received (which depends on the number of months the consumer was affected by the closure and, if other facilities were provided to the consumer, the value of those facilities based on the amenities there available). These types of assessments are sufficiently complicated that they cannot be made merely based on financial records and instead require an individual assessment of class members' damages. This means that all of the MCPA claims cannot be certified for the purpose of monetary damages. This is not to say that they cannot be certified for the purposes of injunctive relief. The MCPA explicitly allows declaratory relief as to the acts and practices of a defendant. Mich. Comp. Laws § 445.911. Declaratory relief is necessary in this case in order to conveniently rule on the legality of the disputed practices of the Defendants. Assuming that the ruling favors the Defendants, it will assist them in collecting on their accounts. Assuming that the ruling favors the Plaintiffs, it will assist them in avoiding collection on the accounts, in avoiding further assignment of the contracts, and in avoiding negative credit reporting. Accordingly, the Court determines that the MCPA claims asserted in-

volve common questions of law and fact as to claims for declaratory, but not monetary, relief.

■■ Defendants finally argue that there are not common questions of law and fact because they have filed counter-claims against two of the class representatives and may wish to assert counter-claims against class members. The counter-claims filed to date present no insuperable difficulties for maintenance of a class action. Furthermore, speculation about future counter-claims is an insufficient reason for denial of class certification. *Roper v. Consurve, Inc.*, 578 F.2d 1106 (5th Cir.1978).

Recognition of the above-noted common questions of law and fact, however, does require one further limitation of the class definitions proposed by Plaintiffs. *See Barney v. Holzer Clinic, Ltd.*, 110 F.3d 1207, 1215 (6th Cir.1997) (limiting class descriptions under Rule 23). The MCPA misrepresentation claim relating to the closure of the clubs was described in the Motion for Class Certification as limited by a six-year limitation period. As noted by Defendants, this term is unnecessarily long because the allegations of the Amended Complaint are that Steven Millenbach did not plan the closure of the clubs before his purchase of clubs in Texas in June 1996. Accordingly, these MCPA claims should be limited to those individuals who purchased contracts on or after June 1, 1996 for services after May 1, 1997. MCPA claims related to undisclosed financing charges, however, are subject to the usual six-year limitation period.

In summary, the alleged policies of the Defendants create common questions of law and fact under TILA, MCPA and MRISA. Under TILA and MRISA, statutory damages are available against the Defendants as further qualified in this Opinion. Under MCPA, declaratory relief is available against the Defendants. The description of the MCPA class related to the closure of the clubs shall be further limited to class members who purchased contracts on or after June 1, 1996 for service after May 1, 1997. The Court

declines to certify common law fraud claims, breach of contract claims, and MCPA damage claims because they depend on the resolution of individual and not common questions of law and fact.

### *Rule 23(a)(3)—Typicality*

■■ Rule 23 requires that the claims asserted by class representatives be typical of class members. *American Med. Systems*, 75 F.3d at 1082. As the Court of Appeals said in the *American Medical Systems* case:

"Typicality determines whether a sufficient relationship exists between the injury to the named plaintiff and the conduct affecting the class, so that the court may properly attribute a collective nature to the challenged conduct . . . ."

\* \* \* \* \* \*

. . . . A necessary consequence of the typicality requirement is that the representative's interests will be aligned with those of the represented group, and in pursuing his own claims, the named plaintiff will also advance the interests of the class members.

*Id* (citation omitted). The typicality requirement, so explained, tends to merge with the commonality requirement. *Falcon*, 457 U.S. at 158 n. 13, 102 S.Ct. 2364. Nevertheless, it is a separate inquiry and in particular focuses attention on differences between class representative claims and class claims which would defeat the representative nature of the class action. *Fuller v. Fruehauf Trailer Corp.*, 168 F.R.D. 588, 598 (E.D.Mich.1996).

■■ In this case, the causes of action of the class representatives derive from the financing and disclosure policies of the Defendants and from the closure of the health clubs. These are the same grievances of the proposed class members, which have impelled their many complaints and relate to the same form contracts and the same alleged policies. The class members and the class representatives' interests in pursuing the class claims are very similar, if not identical.[4] Overall, the Court concludes based on

---

**4.** The objection of Dent–A–Med, Inc., based on the fact that two of the class representatives did not suffer actual damages, relates an insignifi-

cant difference considering the claims to be certified, which will not require proof of actual damages.

the verified allegations of the Amended Complaint and the other evidence filed that the Plaintiffs have asserted claims typical of the class members.

### *Rule 23(a)(4)—Adequacy of Representation*

Rule 23(a) requires that the class members and their counsel be prepared to provide fair and adequate representation to the class. In *Senter v. General Motors Corp.*, 532 F.2d 511, 525 (6th Cir.1976), the Sixth Circuit Court of Appeals articulated two criteria for determining adequacy of representation: "1) the representative must have common interests with unnamed members of the class, and 2) it must appear that the representatives will vigorously prosecute the interests of the class through qualified counsel." Senter, 532 F.2d at 525; *see also American Med. Systems*, 75 F.3d at 1083.

Michelle Van Vels and the other named Plaintiffs are well suited in this matter to pursue monetary and equitable relief fitted to the needs of the class. They understand that their responsibility as class representatives is to adequately represent class members rather than to maximize their own recoveries. Further, counsel for Plaintiffs are well qualified to undertake the representation. Attorney O. Randolph Bragg is a member of the bars of the United States Supreme Court, the Sixth Circuit Court of Appeals, the Western District of Michigan and many other courts. He has served as counsel in many class action and consumer suits, including the matter of *Wright v. Finance Service of Norwalk, Inc.*, 22 F.3d 647 (6th Cir.1994) and at least ten other published Circuit Court of Appeals decisions. Since the early 1970's, his practice has focused on consumer representation in cases like this one. He has published many books and articles on consumer law topics related to his work. Co-counsel Phillip Rodgers is a local attorney and a member of this Court's bar, who has personal contacts with the class representatives and class members and to whom the Attorney General's office has referred class cases. Defendants argue, on this point, that the untimeliness of the certification motion demonstrates that the Plaintiffs and counsel are inadequate class representatives. This statement misunderstands the need for discovery to buttress and support the arguments for class certification. As it happened, the motion was timely filed considering the needs for discovery prior to the filing of the certification motion. Therefore, the Court determines that the parties and counsel are adequate representatives.

### *Rule 23(b)(3)—Common Questions/ Individual Questions*

Plaintiffs seek to certify this class action as a class action under both Rule 23(b)(3) and Rule 23(b)(2). Rule 23(b)(3) employs a four-factor test addressed to the general questions of whether the common questions of law and fact of class members predominate over individual questions of class members, and whether a class action is a superior, fair and efficient method for adjudicating the controversy. The factors to consider in answering the general questions of the Rule are specifically noted in the Rule.

In this matter, the factors specified in the Rule favor a conclusion that common questions predominate over individual questions and that a class action is a superior, fair and efficient method of adjudication. First of all, the class members have some interest in individually controlling the litigation but not an excessive interest. It is true that the individual class members would, by opting for a class action, forsake a greater range of equitable and monetary remedies available to them in individual actions. Nevertheless, as recognized by the class representatives, the pursuit of this action as a class action has given the class members the benefits of very experienced counsel in representing them. Second, the Court must consider the extent of past litigation by class members. No party has provided information about either prior class actions or individual lawsuits commenced against the Defendants as to the allegations made in this case. The Court would expect that there have been some isolated lawsuits caused by the closures of the health clubs. Such isolated lawsuits, if they exist, do not significantly weigh against class action relief given the large number of class members affected. Third, the Court must consider the desirability of concentrating this litigation in a single lawsuit. The desirability of so doing is obvious on first consideration.

The filing of separate suits by class members would be a monumental waste of resources and would likely jeopardize the rights of class members and would waste the resources of the Defendants in defending separate suits. Fourth, the management of the case as a class action is unlikely to create insuperable problems for case management. The legal claims asserted by class members are clearly subject to federal law and Michigan law. The treatment of the legal claims asserted have already been narrowed by this Court so as to prevent individual proofs by class members as to the claims asserted. Accordingly, based on all of these factors as well as the Court's previous analysis, the Court determines that common questions of law and fact predominate over individual questions and that a class action is the superior method for the fair and efficient adjudication of the legal claims at issue. As such, the Court approves the maintenance of this class action under Rule 23(b)(3).

### Rule 23(b)(2)—Injunctive or Declaratory Relief

Under Rule 23(b)(2), the class action may be certified for injunctive or declaratory relief if the party opposing the relief requested has acted or refused to act on grounds generally applicable to the class, making the requests for such relief appropriate. The Sixth Circuit Court of Appeals has approved Rule 23(b)(2) certifications for cases involving equitable relief as to discrimination claims in light of the fact that the Advisory Committee recommended this use of the Rule in such cases. See Senter, 532 F.2d at 525–26. The Advisory Committee has similarly recommended the use of the Rule for cases involving class action claims of injured purchasers. In this case, the alleged policies of the Defendants are generally applicable to affected class members and the claims for declaratory relief under the MCPA are appropriate under the Rule. Accordingly, the Court approves the class pursuant to Rule 23(b)(2).

### Class Notification

Pursuant to Rule 23, the Court shall direct the best notice possible to class members and shall allow class members an opportunity to opt out of the suit. To accomplish this end, counsel for Plaintiffs shall provide to the Court and other parties a proposed class notification form, a statement as to the form of any other notice, such as publication, which they intend to provide to class members, and a mailing list indicating the persons to whom the notice shall be sent. All parties may provide comment on the proposed notification within fourteen days of its filing. The Court will then determine by separate order the contents of the class notification and shall direct service of notice by Plaintiffs' counsel. The Court anticipates that the class notification will be mailed promptly thereafter, barring unforeseen difficulty or interlocutory appeal. Furthermore, the Court urges the parties to confer in order to submit to the Court a stipulation for amendments to the Case Management Order, reflecting changes in scheduling necessitated by the class certification.

### CONCLUSION

Therefore, it is the conclusion of this Court that the Motion for Leave and the Motion for Class Certification shall be granted. The class action shall be certified as to claims brought pursuant to TILA and MRISA and for declaratory relief pursuant to the MCPA. The class action will, however, not be certified as to claims for monetary relief under the MCPA and for claims for common law fraud and breach of contract. An order shall issue consistent with the Opinion.